IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| TIMOTHY MORRIS,<br>Institutional ID No. 59089-177<br><br>Plaintiff,<br><br>v.<br><br>ROSITA LEEN,[1]<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 1:25-cv-00127-BU |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pro Se Plaintiff Timothy Morris, an inmate at the Federal Bureau of Prisons (BOP) FCI Big Spring, brings this action against Defendant Rosita Leen, alleging that she violated his constitutional rights. Morris's claims were subject to judicial screening under 28 U.S.C. §§ 1915, 1915A because Morris has been granted leave to proceed *in forma pauperis*, Dkt. No. 9, and he sues government officials, *see* Dkt. No. 1.

After screening Morris's claims, the Court permitted service of process on his RFRA claim against Leen based on her confiscation of Morris's book, *Odin's Chosen: The Religion of Asatru*. Dkt. No. 21. The Court found plausible that Morris's allegation that *Odin's Chosen* was central to his religious practice and its confiscation substantially burdened his daily religious practice. *Id*. at 11–14. The Court ordered Leen to file an answer

[1] In the pending Motion to Dismiss, the Government notes that Morris misspelled FNU Leen's last name in his original complaint. Dkt. No. 28 at 1 n.1. The Court has issued an electronic order and directed the Clerk to correct and update this. Dkt. No. 29. The Government also provided Leen's first name. Dkt. No. 28 at 1.

or other responsive pleading or motion to this surviving claim. Dkt. No. 23. The Court dismissed all other claims by Morris. *Id*.

Now before the Court is Leen's Motion to Dismiss filed in response to the Court's Order to Answer. Dkt. No. 28. Morris did not file a response and the time for doing so has now passed.[2] For the reasons explained below, the undersigned RECOMMENDS that Leen's Motion be GRANTED on the basis of qualified immunity.

## I. JURISDICTION

The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Morris brings his surviving claim under the Religious Freedom Restoration Act (RFRA). Dkt. No. 1. Venue is proper in the Northern District of Texas, Abilene Division, because Morris's claims arise from his incarceration at FCI Big Spring located in Howard County, Texas. 28 U.S.C. § 1391(b)(2). The undersigned has the authority to enter these Findings, Conclusions, and Recommendations after United States District Judge James Wesley Hendrix transferred Morris's case to the undersigned for pretrial management. Dkt. Nos. 6; 10; 28 U.S.C. § 636(c)(1). Morris consented to the undersigned exercising the full jurisdiction of this Court, but Leen has not. Dkt. No. 6.

## II. FACTUAL BACKGROUND

Morris is an inmate at BOP's FCI Big Spring facility, Dkt. No. 1 at 1, and a practicing Asatruar. As a recognized religion with northern European origins, followers of Asatru believe and worship the ancient Norse and Germanic figures like Thor and Odin.

[2] A response was filed purportedly on Morris's behalf by a person claiming to have Morris's power of attorney; however, that response was unfiled and not considered by the undersigned for reasons explained in the Order at Dkt. No. 34.

The BOP accommodated Morris's practice of Asatru by providing a designated outdoor worship area, referred to as The Grove, within the facility's recreation compound. Dkt. No. 19 at 2, 11.

Morris also used several religious texts to practice his faith, including various *Loki's Gospel* and various *Sagas*, as an Asatru adherent. Dkt. No. 19 at 7. But *Odin's Chosen* is central to his religious practice. Dkt. No. 1 at 3. Morris's copy of *Odin's Chosen* was gifted by his religious mentor, personally inscribed to him, and no longer in print.[3] *Id*. Morris kept the book in his designated living area and used it daily for devotional study, preparation for ritual practice, and personal religious guidance. Dkt. No. 19 at 19.

Morris's claims arise from the Assistant Warden Leen's alleged interference with his practice of Asatru, specifically through her confiscation of *Odin's Chosen*. He alleges that Leen has "target[ed] the Asatru religion" ever since she took her position as assistant warden. Dkt. Nos. 1-2 at 25. Sometime prior to August 5, 2024, Leen made efforts to remove the Altar and shrubs from the Grove. Dkt. Nos. 1-2 at 25; 19 at 17, 20. Morris responded by filing grievances against her interference with the Grove. Dkt. No. 19 at 20.

On August 5, 2024—within a week of Morris's grievances—a search was conducted

---

[3] In the Motion to Dismiss, the Government disputes Morris's allegations about the book's print status and cites to an Amazon.com weblink to support its position that the book is available for purchase online for $20.18. Dkt. No. 28 at 2 n.4. Generally, district courts "must not go outside the pleadings and must accept all well-pleaded facts as true, viewing those facts most favorably to the plaintiff." *Scanlan v. Texas A&M Univ.*, 343 F.3d 533 (5th Cir. 2003) But a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy*, LLC, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Here, however, the Court refuses to consider the weblink because it is not referenced in Morris's pleadings, and the Court assumes the book's print status is not essential to his RFRA claim.

of his assigned living area.[4] Dkt. Nos. 1-2 at 12; 19 at 20. Prior to the search, Leen and another officer informed the inmates that they had found contraband in a closet. Dkt. No. 19 at 7. Leen directed the officer to take anything that was not on the BOP-approved list, including extra bowls and clothes. *Id.* She then directed all the inmates to leave; Morris and the other inmates were not allowed to observe the search of the dorms. *Id.*

When Morris returned to his dorm after the search, his living area was "trashed[,]" and his religious texts were gone. Dkt. No. 19 at 7. In place of his books, a Bible which he did not own had been left on his bunk. *Id.* at 8. Bibles were also left in the living areas for other inmates. *Id.* Morris went to the unit team and spoke with a BOP officer, Ms. Diaz; while there, Morris found and recovered his copies of *Sagas* and *Loki's Gospel*. *Id.* But when he inquired about his copy of *Odin's Chosen*, Leen was called in and informed him that it had been taken to "Hot Trash."[5] *Id.* Morris was never provided a confiscation form, inventory sheet, or contraband notice, and was never told the book violated any BOP policies; on the contrary, Morris alleges the book was a permitted religious text. *Id.*

The loss of the text deprived Morris of access to core Asatru teachings and materials, and he was not provided an alternative Asatru text. Dkt. No. 19 at 15. Morris alleges that he cannot fully practice his faith according to his beliefs without the book. *Id.* Morris claims that a "sworn witness," fellow inmate David Martin, alleged that Leen alone was seen

[4] The Court notes that Morris states in his Complaint that the search and confiscation occurred on April 30, 2025. *See, e.g.*, Dkt. No. 1 at 2, 4. While it appears the search of the Grove did occur on this date, *see* Dkt. Nos. 1-2 at 4, his Complaint contains grievances alleging the loss of *Odin's Chosen* dated August 5, 2024. Dkt. Nos. 1-2 at 12.

[5] "Hot Trash" is a BOP term for contraband or other items slated for immediate or secure disposal.

going through Morris's belongings and that Martin "observed the Bible placed there by AW Lean [sic]." Dkt. No. 1 at 4. Morris claims SIS Eccleston attempted to intimidate Martin from giving truthful testimony; during an interview, Eccleston questioned why Martin saw "so much shit" around the camp. *Id.* at 5.[6]

When his copy of *Odin's Chosen* was confirmed missing, Morris was directed to file a grievance. Dkt. No. 19 at 7. Morris asked officer Girard who had "shook [him] down" or searched his cell. Dkt. No. 19 at 7. Girard at first claimed to not know, but when Morris asked for his name to put on the grievance, Girard said Leen was responsible. *Id.*

Morris filed his grievance on August 5, 2024, alleging that Leen knowingly took his copy of *Odin's Chosen* and replaced it with a Bible. Dkt. Nos. 1–2 at 12. Because his claim could not be resolved at the informal level of his grievance, he was issued a BP-9 form for an Administrative Remedy on August 13, 2024. *Id.* Morris received an informational response to his BP-9 on August 19, 2024. Dkt. Nos. 1–2 at 23. Warden C. Humphrey explained that his allegation of staff misconduct would be reviewed, but that inmates were not entitled to be informed about the outcome of the review. *Id.* Instead, Morris was directed to "begin the Tort Claim process in regard to [his] confiscated property." [7] *Id.*

Morris then filed an Administrative Tort Claim for the loss of *Odin's Chosen*. Dkt. No. 1 at 5. His claim was denied on April 24, 2025. Dkt. Nos. 1–2 at 21–22. Morris alleges

---

[6] Martin's testimony during the interview was that he saw a Bible on Morris's bunk, and that C.O. Girard had informed him and Morris that only Leen went through their stuff that day. Dkt. No. 1-2 at 16.

[7] Morris was also given the option to appeal the response within twenty days. Dkt. Nos. 1-2 at 23. The authenticated record indicates that he did so, filing a BP-10 and BP-11; the final response on November 20, 2024, upheld the prior disposition, noting that he did not request any specific relief in his appeals and that internal staff review was the appropriate remedy.

that his tort claim was denied because no witnesses saw the book's confiscation,[8] despite inmates being barred from observing the search and a credible witness—Martin—offering a sworn statement. Dkt. No. 1 at 5.

## III. LEGAL STANDARDS

A motion to dismiss for failure to state a claim under Rule 12(b)(6) "turns on the sufficiency of the 'factual allegations' in the complaint.'" *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam)). Thus, if a plaintiff "plead[s] facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" they contend entitle them to relief, the claims should not be dismissed merely because the plaintiff fails to articulate the proper legal theory that otherwise makes those facts actionable in court. *Johnson*, 574 U.S. at 11–12 (citing Fed. R. Civ. P. 8(a)(2)–(3), (d)(1), (e)).

Courts accept well-pleaded factual allegations as true, viewing them in the light most favorable to the plaintiff. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). "Well-pleaded" means the factual allegations, while not required to be detailed, must amount to more than mere labels, conclusions, or a statement of the legal elements of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Chhim*, 836 F.3d at 469.

Substantive plausibility does not require a plaintiff to plead enough facts to establish

[8] The BOP denial letter attached to his pleadings states that Morris's claim was denied because he provided no receipts or proof of ownership, and because the witness they interviewed stated they did not observe an officer confiscating his property. Dkt. No. 1-2 at 1.

the events at issue probably occurred as alleged, but the facts must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678–79). And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Ultimately, "'[d]etermining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).

## IV. ANALYSIS

The Government contends that Morris's RFRA claim should be dismissed with prejudice because (1) Morris fails to plausibly establish a RFRA claim; (2) Leen is entitled to qualified immunity; and (3) the Prison Litigation Reform Act (PLRA) bars Morris's claim for mental and emotional damages absent a physical injury. Dkt. No. 28 at 1–2. Whether Morris plausibly stated a RFRA claim and whether he can satisfy the first prong of a qualified immunity analysis are the same, *i.e.*, whether the plaintiff has plausibly stated a violation of federally protected rights.[9] The undersigned starts there.

[9] In deciding whether a government employee is entitled to qualified immunity, courts conduct a two-pronged inquiry. First, courts consider whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009). Second, courts determine whether the violated constitutional right was clearly established within the specific context of the case. *Id.* at 201

A. *Whether Morris plausibly alleged a RFRA claim*

The Fifth Circuit Court of Appeals recently reminded courts that the standard for stating a claim at the preliminary screening stage is the same standard for stating a claim at the motion to dismiss stage, *even if the motion to dismiss asserts qualified immunity*. *Santander v. Salazar*, 133 F.4th 471, 478 (5th Cir. 2025) (the "assertion of qualified immunity . . . does not subject the complaint to a heightened pleading standard.") (citing *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (citation modified). In other words, when a defendant asserts qualified immunity at the motion to dismiss stage, "the district court must do not more than determine whether the plaintiff has filed[d] a short and plain statement of his complaint, a statement that rests on more than conclusions alone." *Santander*, 133 F.4th at 478 (quoting *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016) (citation modified) (quoting in turn *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc).

RFRA, enacted in 1993, prohibits the Federal government[10] from substantially burdening religious exercise unless said burden is the least restrictive means of furthering a compelling government interest. *Cutter v. Wilkinson*, 544 U.S. 709, 714–15 (2005). In order to state a claim, the plaintiff must demonstrate that his religious exercise has been substantially burdened. *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 350 (5th Cir. 2022).

[10] While RFRA was ruled unconstitutional as applied to the States and their subdivisions, it remains applicable to the Federal government; Congress then enacted the Religious Land Use and Institutionalized Persons Act (RLUIPA), applying essentially the same legal requirements to a smaller number of state and local institutions. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 695–96 (2014) ("RLUIPA . . . enacted under Congress's Commerce and Spending Clause powers, imposes the same general test as RFRA but on a more limited category of governmental actions.").

Religious exercise under RFRA consists of "any exercise of religion," whether or not it is compulsory within or central to a religious belief system.[11] Such exercise of religion is substantially burdened if the government "truly pressures the adherent to significantly modify his religious behavior and significantly violates his religious beliefs." *Adkins v. Kasper*, 393 F.3d 559, 570 (5th. Cir. 2004).

Government action has a "significant" effect if it either "(1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs." *Id.* Confiscation of religious articles that entirely prevent religious exercise imposes a substantial burden.[12]

Once the plaintiff has made an initial showing that his religious exercise has been substantially burdened, the burden then shifts to the government to demonstrate that a compelling government interest exists, and the burden imposed on religious exercise is the least restrictive means of furthering that interest. *Biden*, 27 F.4th at 350. But it is not enough for the government to assert a compelling interest in general terms. *Biden*, 27 F.4th at 350–51. Instead, the government must show a generally compelling interest remains compelling when applied "'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Id.* at 350. "And RFRA 'demands much more[]' than

---

[11] 42 U.S.C. § 2000cc-5(7)(A) (RLUIPA definition of Religious Exercise); 42 U.S.C. § 2000bb-2(4) (defining "exercise of religion" under RFRA to mean "religious exercise, as defined in section 2000cc-5").

[12] *Compare Shaw v. Norman*, No. CIV.A.6:07CV443, 2009 WL 1780123, at *3 (E.D. Tex. June 22, 2009) (confiscation of Koran and prayer beads imposed a substantial burden because it entirely prevented religious exercise) *with Rountree v. Clarke*, No. 7:11CV00572, 2015 WL 1021286, at *7 (W.D. Va. Mar. 9, 2015) (citing various cases in which confiscation of religious books did not burden religious practice because other texts were available or importance to religious practice not articulated).

deferring to 'officials' mere say-so that they could not accommodate [a plaintiff's religious accommodation] request.'" *Id.* at 351; *see Prison Legal News*, 683 F.3d at 215 (quoting *Beard v. Banks*, 548 U.S. 521, 535 (2006)) (noting that the government "must do more . . . than merely show 'a formalistic logical connection between [its policy] and a penological objective.'"); *see also DeMarco v. Davis*, 914 F.3d 383 (5th Cir. 2019) (finding that defendants had not sufficiently identified any legitimate government interests justifying the alleged seizure of the plaintiff's religious materials).

As previously stated at screening, the undersigned accepts without difficulty that Morris is a sincere Asatru adherent, and that the daily observances he practices comprise "exercise of religion" under RFRA. Dkt. No. 21 at 12 (citing Dkt. Nos. 1 at 3; 19 at 2, 10). Thus, the only issue during screening was whether Leen's alleged confiscation of *Odin's Chosen* substantially burdened Morris's religious exercise, and the Court found at screening that Morris plausibly alleged that it did. Dkt. No. 21 at 12–13. In making this finding, the Court observed that Morris alleged he used *Odin's Chosen* as part of his daily religious practice for devotional study, ritual practice, and personal religious guidance. Dkt. No. 21 at 13 (citing Dkt. No. 19 at 10). He alleged that he no longer had "access to [*Odin's Chosen's*] teachings" once it was confiscated. Dkt. No. 21 at 13.

The Court reasonably inferred from these allegations that Morris could no longer engage in devotional study or rely on *Odin's Chosen* for religious guidance. Dkt. No. 21 at 13. Indeed, Morris specifically alleged that he could not "fully practice [his] faith" without access to the religious text. Dkt. No. 21 at 13 (citing Dkt. No. 19 at 15). Thus, while even non-central religious exercise is protected by RFRA, Morris specifically alleged that *Odin's*

*Chosen* was central to his religious practice. Dkt. No. 21 at 13 (citing 42 U.S.C. §§ 2000bb-2(4), 2000cc-5(7)(A); Dkt. No. 1 at 3). And because Leen's alleged confiscation of *Odin's Chosen* entirely prevented at least some aspects of Morris's religious exercise, the Court found it plausible that he sufficiently alleged a RFRA claim. Dkt. No. 21 at 13.

Leen now argues that Morris fails to state a RFRA claim. She correctly asserts that a substantial burden in this context is one that "truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." Dkt. No. 28 at 5. And that "[w]hether a government action or regulation substantially burdens an adherent's religious exercise requires a fact-specific, case-by-case inquiry." Dkt. No. 28 at 5 (citing *Mayfield v. Texas Dep't of Crim. Just.*, 529 F.3d 599, 613 (5th Cir. 2008)). Finally, Leen asserts, again correctly, that "[t]he prisoner bears the burden to establish the existence of a substantial burden on his religious exercise." 28 at 5 (citing *Mayfield* 529 F.3d at 613). But she fails to directly address how or why Morris's reliance on *Odin's Chosen* falls short of constituting "any exercise of religion," whether compulsory, central, or otherwise.

Once the Court found that Morris plausibly alleged a substantial burden on his religious exercise in the confiscation of *Odin's Chosen*, the burden shifted to Leen to demonstrate that a compelling government interest exists, and that confiscation of *Odin's Chosen* was the least restrictive means of furthering that interest. *Biden*, 27 F.4th at 350.

Leen suggests that the *purpose* of the search was not to substantially burden Morris's religious exercise, Dkt. No. 28 at 6, and that the return of Morris's *Sagas* and *Loiki's Gospel* "together permitted [Morris] to continue with his religious practice, even in the absence of [*Odin's Chose*]." *Id*. Otherwise, Leen does not seriously challenge that Morris plausibly

alleged a substantial burden on his religious exercise. The purpose of the search is, of course, irrelevant to Morris's RFRA claim, although it may be relevant to Leen's assertion of qualified immunity. And Leen's conclusion that the return of the *Sagas* and *Loiki's Gospel* "together permitted [Morris] to continue with his religious practice, even in the absence of [*Odin's Chosen*]," is speculative and fails to explain how Leen know this is true.

Rather, the main thrust of Leen's argument is that the confiscation of *Odin's Chosen* furthered a legitimate penological interest, *i.e.*, prison security, in the least restrictive manner because Morris possessed "no receipt, property sheets, or other proof of ownership," of the book. Dkt. No. 28 at 6–7. In other words, the book was contraband and subject to confiscation, religious or not. Leen argues, "the Fifth Circuit has recognized that security is a compelling governmental interest in the prison setting." Dkt. No. 28 at 5 (citing *Sossaman v. Lone Star State of Texas*, 560 F.3d 316, 332, 334 (5th Cir. 2009). This much, as the Fifth Circuit said in *Sossaman* in the context of summary judgment, is obvious. Less clear is how the compelling interest in institutional security remained so when applied specifically to Morris's copy of *Odin's Chosen*. Leen merely invokes institutional security as a justification for the confiscation without showing a reasonable connection between prison security and the alleged confiscation of Morris's *Odin's Chosen*. *DeMarco*, 914 F.3d at 389 (noting that defendants must "put forward" a legitimate government interest to justify substantially burdening a plaintiff's religious exercise); *Prison Legal News*, 683 F.3d at (5th Cir. 2012) (noting that although plaintiffs bear the burden of showing the policy is not reasonably related to legitimate penological interests, the government defendants must provide a sufficient record to show the policy in question was reasonable). Again,

"RFRA 'demands much more[]' than deferring to 'officials' mere say-so that they could not accommodate [a plaintiff's religious accommodation] request.'" *Biden,* 27 F.4th at 351; *Taylor v. Nelson*, No. 20-51051, 2022 WL 3044681, at *1 (5th Cir. Aug. 2, 2022) ("[I]t is not the prisoner's or a court's job to speculate what [the legitimate penological concerns] are. It is up to [the defendant] officials . . . to put [it] forward") (citation modified).

Other than the response filed on Morris's behalf by his purported power of attorney, now unfiled, Morris has not responded to the Motion. Nevertheless, accepting his well-pleaded factual allegations as true and viewing them in the light most favorable to him, the undersigned finds that Morris has alleged enough facts to allow the Court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc.,* 634 F.3d at 796. The undersigned finds that Morris's allegations plausibly state a RFRA violation.

B. *Whether Leen is entitled to qualified immunity*.

The Government's central assertion in its Motion is that "[e]ven if Morris's Complaint is somehow sufficient to state a RFRA claim, Leen is entitled to qualified immunity." Dkt. No. 28 at 8.

*i. Legal Standards*

Qualified immunity shields government officials from civil liability and monetary damages unless (1) they violated a federal statutory or constitutional right and (2) the unlawfulness of their conduct was clearly established at the time. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *D.C. v. Wesby*, 583 U.S. 48, 62–63 (2018); *Brown v. Burmaster*, 181 F.4th 642, 674 (5th Cir. 2026). Once a defendant invokes the doctrine, the plaintiff bears the burden of negating the defense. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir.

2010). Importantly with this, "[c]ourts may address the two prongs in any order, and defendants are entitled to qualified immunity if the plaintiff fails either prong." *Dilworth v. Tucker*, 179 F.4th 992, 996 (5th Cir. 2026) (quoting *Wetherbe v. Tex. Tech Univ. Sys.*, 138 F.4th 296, 301 (5th Cir. 2025)).

A right is "clearly established" when at the time of defendant's conduct, existing law was "sufficiently clear that every reasonable official would understand that what he [was] doing" was unlawful. *Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015) (citation modified); *Ashcroft v. al–Kidd*, 563 U.S. 731 (2018) (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Plaintiffs must show controlling authority or "robust consensus of cases of pervasive authority" showing the right is clearly established. *al-Kidd*, 563 U.S. at 742 (citation modified). For the unlawful conduct to be clearly established, "a legal principle must have a sufficiently clear foundation in then-existing precedent[,]" making the rule "settled law." *Wesby*, 583 U.S. at 589 (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam)). With this, the Court is required to examine the factual context of the case with a high level of specificity—not a high level of generality. *See al–Kidd*, 563 U.S. at 742; *Mullenix*, 577 U.S. at 12.

A plaintiff's burden in overcoming qualified immunity is a demanding standard that reinforces the purpose of the doctrine: to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

*ii. Application*

Morris cannot negate Leen's qualified immunity because he has not identified controlling authority which makes his right to retain *Odin's Chosen* sufficiently clear that

every reasonable official would have understood that confiscating the book, particularly when Morris lacked receipts or paperwork, was unlawful. *Mullenix,* 577 U.S. at 11–12; *al–Kidd,* 563 U.S. at 741. Morris has failed to even establish that Leen—or any other officer—would have known that *Odin's Chosen* was central to the practice of his faith.

In short, Morris fails to explain how Leen would have been on notice that her alleged confiscation of *Odin's Chosen*, in this specific factual context as required by a qualified immunity analysis, violated RFRA. *See Biron v. Upton*, No. 19-10862, 2022 WL 17691622, at *2 (5th Cir. Dec. 14, 2022) (holding that qualified immunity barred a plaintiff inmate's RFRA claim because she could not identify any precedent showing that a prison official's mistaken confiscation of her personal religious writings violated a constitutional right or federal law.).[13] Therefore, Leen is entitled to qualified immunity.

C. *Whether Prison Litigation Reform Act (PLRA) bars Morris's claim for mental and emotional damages absent a physical injury.*

Because the Court should resolve Morris's claims based on Leen's qualified immunity, it should find it unnecessary to address the issue of Leen's PRLA damages argument.

[13] In *Biron*, Chief Judge Elrod's concurring in part opinion explained she would have reversed in part and remanded because the plaintiff likely had one viable claim for relief that required additional factual development. *Biron*, 2022 WL 17691622, at *3–4. In her view, Biron's request to have her manuscript returned was not moot because the defendants still possessed her writing materials and they did not deny this allegation. *Id*. Importantly in contrast, Leen denies she confiscated *Odin's Chosen*, Dkt. No. 28 at 7, the book has been purportedly disposed, Dkt. No. 18 at 8, and in the Court's questionnaire, Morris admits he and his fellow inmates did not observe Leen taking the book. Dkt. No. 19 at 7. These differences are likely sufficient to distinguish *Biron* or any concern that dismissal of Morris's remaining RFRA claim is premature.

## V. CONCLUSION

For the reasons above, the undersigned RECOMMENDS that Morris's RFRA claim be DISMISSED with prejudice under qualified immunity.

## VI. RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendations must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendations where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## VII. TRANSFER OF CASE

As of the date of these Findings, Conclusions, and Recommendations, all parties have not consented to the magistrate judge exercising the full jurisdiction of this Court. Thus, it is ORDERED that this case be transferred back to the docket of United States

District Judge James Wesley Hendrix. This case shall now be designated as Civil Action No. 1:25-cv-00127-H.

ORDERED this 8th day of October 2026.

JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE